UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STELA CEKANI,<br><br>                              Plaintiff,<br><br>                v.<br><br>THE YWCA OF BROOKLYN, Inc.,<br><br>                              Defendant. | Case No.<br><br>**COMPLAINT** |

COMES NOW the Plaintiff, Stela Cekani, through her attorneys, David S. Schwartz Law, PLLC, for her Complaint against the Defendant, The YWCA of Brooklyn, Inc., and alleging as follows:

## PRELIMINARY STATEMENT

1. This is an action for employment discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* ("ADA") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et. seq.* ("NYCHRL"). Plaintiff, who was diagnosed with Lyme Disease, was terminated by Defendant just a few short months after notifying Defendant of her condition, and on the very same day that she asked Defendant for a reasonable accommodation. By this action Plaintiff seeks all remedies available in law and in equity. Plaintiff demands a trial by jury.

## PARTIES

2. Plaintiff Stela Cekani ("Plaintiff" or "Ms. Cekani") is an individual who resides in Middletown, New Jersey.

3. Defendant The YWCA of Brooklyn, Inc. ("YWCA") is a New York Corporation with its principal place of business located at 30 Third Avenue, Brooklyn, New York 11217.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over Plaintiff's claims brought under city law pursuant to 28 U.S.C. § 1367, as Plaintiff's federal and city law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the United States Constitution.

6. This Court further has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds $75,000.

7. The Eastern District of New York is the proper venue for this action as a substantial part of the acts and/or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## LEGAL PREREQUISITES

8. Plaintiff submitted a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") regarding the facts and claims upon which the herein action is based.

9. The EEOC subsequently issued Plaintiff a Notice of Right to Sue.

10. This action is being brought within ninety days of receipt of the Notice of Right to Sue.

## MATERIAL FACTS

11. Ms. Cekani began working for YWCA in or about June 2019. Her title was Director of Housing.

12. Ms. Cekani began her position earning a salary of $85,000/yr. as well as benefits such as participation in YWCA's health insurance coverage, dental plan, 403b, and transit checks.

13. Ms. Cekani's offer letter from YWCA indicated that her salary would increase to $90,000 on January 1, 2020 "assuming satisfactory performance."

14. Ms. Cekani performed her duties at YWCA in an exemplary manner.

### A. Ms. Cekani's Disability.

15. By way of letter dated November 18, 2019, YWCA President and CEO Martha Kamber wrote to Ms. Cekani, "[s]ince assuming your position as director of housing on June 10th, 2019, you have led the program with dedication and the highest level of professionalism. As a result, the department has progressed through the implementation of new policies and protocols, as well as extensive file audits addressing preexisting deficiencies. Additionally, you have partnered effectively with the Resident Services Director, YWCA Brooklyn legal team and NYC subsidy programs to reduce arrears and increase rent collection."

16. The letter went on to state that "you [Ms. Cekani] have set a new standard for excellence and have supervised existing as well as new staff with consistency and clear expectations. Furthermore, under your leadership, the relationship between the housing program and fiscal management staff has greatly improved facilitating better oversight, accuracy, and collaboration."

17. The letter concluded by stating that YWCA was increasing Ms. Cekani's salary from $85,000/yr. to $95,000/yr. retroactive to September 9, 2019, and would be further increasing her salary from $95,000/yr. to $100,000/yr. on January 1, 2020.

18. These increases were above the proposed $5,000 raise indicated in Ms. Cekani's offer letter, and were in given by Defendant in recognition of Ms. Cekani's hard work and job performance.

19. Ms. Cekani rewarded YWCA's faith in her by continuing to perform all of her duties in an exemplary manner.

20. On or about June 1, 2020, YWCA again increased Ms. Cekani's salary to $110,000/yr.

21. In or about July 2020, Ms. Cekani was diagnosed with Lyme Disease by her physician.

22. The symptoms of her Lyme Disease, including fatigue and pain, substantially limite various major life activities.

23. Ms. Cekani made CEO Kamber as well as her immediate supervisor Johnny Nunez aware of her diagnosis. Ms. Cekani further made Ms. Kamber aware that Ms. Cekani was undergoing treatments related to her diagnosis and that these treatments were causing Ms. Cekani to experience some negative side-effects.

24. YWCA's relationship with, and treatment of, Ms. Cekani suddenly began to sour immediately after Ms. Cekani informed YWCA of her diagnosis.

25. In or about September 2020, Ms. Cekani informed Ms. Kamber – via Ms. Kamber's administrative assistant – that Ms. Cekani would be out for the day to attend a medical appointment related to her Lyme Disease diagnosis. This was the first request for time off from work that Ms. Cekani made during 2020 related to her Lyme Disease.

26. One month later, on or about October 22, 2020, Ms. Cekani was at the office speaking with Mr. Nunez. Ms. Cekani explained to Mr. Nunez that Ms. Cekani had a doctor's note which stated that she should work from home and recommended a more flexible schedule.

27. Shortly after this conversation on that same day, October 22, 2020, Ms. Kamber, along with Bess Sabota, Human Resources Director, terminated Ms. Cekani by telephone.

28. Ms. Kamber first told Ms. Cekani that her termination was due to financial reasons and organizational restructuring. However, later in that same conversation Ms. Kamber instead stated that Ms. Cekani was being terminated because "lately [Ms. Cekani] seemed unhappy."

29. Prior to her termination, Ms. Cekani received no indication from YWCA of any issues with her job performance nor any indication that her position was in jeopardy.

30. At a weekly staff meeting which took place shortly before Ms. Cekani's termination, Ms. Kamber had stated to the entire staff that YWCA was financially sound and was able to carry-on through the COVID-19 pandemic and that no one should be worried about losing their jobs.

31. Despite Ms. Cekani's position as Director of Housing, at no time did YWCA tell her of any so-called financial issues or restructuring plans.

32. On the date of her termination, Ms. Cekani requested a copy of her personnel file. However, YWCA did not provide Ms. Cekani with these documents until more than a week later, on October 30, 2020.

33. Ms. Cekani's personnel file also did not include any of her performance evaluations. Despite Ms. Cekani requesting these documents numerous times following her termination, YWCA failed to respond to this request.

34. Ms. Cekani could perform all of the essential functions of her job with or without a reasonable accommodation.

35. Ms. Cekani made a request for a reasonable accommodation.

36. YWCA discriminated against Ms. Cekani on the basis of Ms. Cekani's disability and accommodation request.

37. YWCA retaliated against Ms. Cekani due to her engagement in protected activity.

### B. Ms. Cekani's Complaints to YWCA.

38. YWCA further retaliated against Ms. Cekani after Ms. Cekani complained to YWCA about resident events which YWCA sought to hold on a rooftop which did not have elevator access and which therefore would not be able to be attended by residents with disabilities.

39. on September 15, 2020, during a weekly 'Workplace Safety Task Force' meeting, YWCA staff discussed how the Housing Department might assist the Resident Services team with setting up rooftop gardening events for YWCA residents.

40. Then, on September 16, 2020, Ms. Cekani, along with Property Manager Dionne Christopher, conducted a walkthrough of the property and rooftop with the specific intention and purpose of assessing the location's accessibility and any potential liabilities regarding any potential events there.

41. During this walkthrough Ms. Cekani observed and became aware that the rooftop was not accessible by elevator, and that the only way to reach the rooftop was by walking up at least fifteen stairs.

42. Ms. Cekani stated that she did not believe YWCA should hold the events on the rooftop unless and until it was accessible to all residents, and that the rooftop events would not be accessible to YWCA residents with disabilities affecting their mobility.

43. Ms. Kamber became visibly angry when Ms. Cekani brought up her concerns regarding the lack of access to the rooftop for disabled persons. Ms. Kamber ultimately decided to hold the events on the rooftop.

44. Shortly after Ms. Kamber berated Ms. Cekani for complaining that YWCA's conduct violated the ADA, YWCA terminated Ms. Cekani.

45. Ms. Cekani's actions constituted protected activity under federal and city employment laws.

46. YWCA retaliated against Ms. Cekani due to her engagement in protected activity.

## FIRST CAUSE OF ACTION
## DISCRIMINATION IN VIOLATION OF THE ADA

47. Plaintiff repeats and realleges each paragraph above.

48. Defendant was at all relevant times a covered employer under the ADA.

49. Plaintiff was disabled within the meaning of the ADA.

50. Defendant discriminated against Plaintiff by terminating her on the basis of her actual and/or perceived disability.

51. Defendant discriminated against Plaintiff by failing to provide Plaintiff with a reasonable accommodation for her disability.

52. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages for which she is entitled to relief.

## SECOND CAUSE OF ACTION
## RETALIATION IN VIOLATION OF THE ADA

53. Plaintiff repeats and realleges each paragraph above.

54. Plaintiff engaged in protected activity under the ADA.

55. Defendant retaliated against Plaintiff by terminating her in retaliation for her

7

good faith engagement in protected activity.

56. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages forwhich she is entitled to relief.

### THIRD CAUSE OF ACTION
### DISCRIMINATION IN VIOLATION OF THE NYCHRL

57. Plaintiff repeats and realleges each paragraph above.

58. Defendants were at all relevant times employers within the meaning of the NYCHRL.

59. Plaintiff is a covered employee within the meaning of the NYCHRL.

60. Plaintiff was disabled within the meaning of the NYCHRL.

61. Defendants unlawfully discriminated against Plaintiff by creating a hostile work environment for Plaintiff on the basis of Plaintiff's disability.

62. Defendants unlawfully discriminated against Plaintiff by terminating her on the basis of her disability.

63. As a result of Defendants' unlawful conduct, Plaintiff has suffered damages for which she is entitled to relief.

### FOURTH CAUSE OF ACTION
### RETALIATION IN VIOLATION OF THE NYCHRL

64. Plaintiff repeats and realleges each paragraph above.

65. Plaintiff's good faith complaints of discrimination constituted protected activity under the NYCHRL.

66. Plaintiff's request for a reasonable accommodation constituted protected activity under the NYCHRL.

67. Plaintiff's complaints regarding violations of disability discrimination laws by

Defendant constituted protected activity under the NYCHRL.

68. Defendants unlawfully retaliated against Plaintiff by terminating her in retaliation for her good faith engagement in protected activity.

69. As a result of Defendants' unlawful conduct, Plaintiff has suffered damages forwhich she is entitled to relief.

## JURY DEMAND

70. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Stela Cekani hereby demands a trial by jury as to all issues triable by jury in the herein action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendant as follows:

A. Declaring that Defendant engaged in unlawful employment practices of discrimination and retaliation prohibitedby the ADA and the New York City Human Rights Law;

B. Awarding damages to Plaintiff for all lost wages and benefits, back pay and front pay, as well as compensatory damages for mental and emotional pain and suffering and all other compensatory damages allowable under the law, resulting from Defendant's unlawful actions;

C. Awarding Plaintiff punitive damages to punish the Defendant for its unlawful conduct;

D. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action, to the extent allowed by law;

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper.

Dated:   New York, New York
         December 15, 2022

_____
David S. Schwartz, Esq. (DS5982)
David S. Schwartz Law, PLLC
*Attorney for Plaintiff Stela Cekani*
30 Broad Street, 14th Floor
New York, New York 10004 (212) 774-9420
Dschwartz@dsslawfirm.com